UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-MJ-8141-RMM

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

SHAWN JONATHAN GARTH,

                Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Miami Office of the United States Attorney's Office prior to July 20, 2008?

    Yes    X No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office (West Palm Beach Office) only prior to December 18, 2011?

    Yes    X No

3. Did this matter originate from a matter pending in the Fort Pierce Office of the United States Attorney's Office prior to August 8, 2014?

    Yes    X No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY: /s/ John C. McMillan
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500228
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Office: (561) 820-8711
John.mcmillan@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| SHAWN JONATHAN GARTH | ) Case No. 22-MJ-8141-RMM |
| | ) |
| | ) |
| Defendant(s) | ) |

FILED BY __SP__ D.C.

Apr 12, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __10/26/2021__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) | Possession with Intent to Distribute a Controlled Substance, to wit, Fentanyl and Cocaine Base ("Crack" Cocaine); |
| 18 U.S.C. §§ 922(g)(1), 924(a)(2) | Felon in Possession of Firearms and Ammunition; and, |
| 18 U.S.C. § 924(c)(1)(A) | Possession of one or more firearms in furtherance of a federal drug trafficking crime. |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Mark Finnamore, Special Agent, ATF
Printed name and title

Subscribed and sworn to before me in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone (Facetime)__.

Date: __04/12/2022__ 9:10AM

_____
Judge's signature

City and state: __West Palm Beach, Florida__   Hon. Ryon M. McCabe, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT
## Case No. 22-MJ-8141-RMM

I, Mark Finnamore, first being duly sworn, do hereby depose and state as follows:

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) United States Department of Justice (DOJ) and have been employed as such since December of 2017. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1)(e) and Title 21, United States Code.

2. Your affiant is currently employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been employed in that capacity for approximately 5 years. Prior to my employment as a Special Agent with ATF, I attended the Federal Law Enforcement Training Center for the Criminal Investigator Training Program as well as Special Agent Basic Training with ATF, where I received extensive training in arson, explosives, and firearms related investigations. In my capacity as an ATF Special Agent, I have received specialized training and experience in the investigation of federal firearms and narcotics offenses. Additionally, I have received specialized training in Firearm Interstate Nexus testimony from ATF.

3. This affidavit is submitted in support of a criminal complaint charging Shawn GARTH (hereinafter GARTH) with Possession with intent to Distribute Crack Cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), Possession with intent to Distribute Fentanyl, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1), and Possession

of a Firearm by a Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). The information contained in this affidavit is based on my own personal knowledge as well as information imparted to me from other law enforcement officers and agents. This affidavit is submitted for the limited purpose of establishing probable cause. It does not purport to describe everything known to your affiant concerning the investigation.

## BACKGROUND OF INVESTIGATION

4. In or about October of 2020, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in conjunction with Homeland Security Investigations (HSI), the Palm Beach County Sheriff's Office (PBSO), and the West Palm Beach Police Department (WPBPD) initiated a proactive investigation into the narcotic distribution activities of Shawn Garth in Palm Beach County, Florida within the Southern District of Florida.

## PROBABLE CAUSE

### Traffic Stop

5. On or about October 26, 2021, Agents from PBSO District 3 Street Team conducted a traffic stop on a White Jeep Grand Cherokee bearing Florida Tag RSS4U in the vicinity of 8101 Okeechobee Boulevard, West Palm Beach, Palm Beach County, Southern District of Florida 33411, for traffic violations to include a tinted tag cover, extremely dark window tint which later measured at 3% utilizing a tint meter, a license tag which has expired on October 21, 2021. Upon contact with the vehicle's driver, Florida Department of Motor Vehicles indices checks further determined that the driver and registered owner of the vehicle, Shawn GARTH, had a suspended license at the time of the stop. GARTH was detained and a tow truck was called for the vehicle for transportation to the impound lot. In accord with written PBSO policy, an inventory search was conducted of the vehicle in preparation for towing, during which agents located a cigar tube containing what field tested positive as cocaine residue, $1,305 in US

2

currency, and a fixed blade knife with a blade in excess of four inches in the door compartment of the vehicle, where it was concealed from the sight of an ordinary person. It was also noted by agents that there appeared to be tool marks along the dashboard area of the vehicle. Based on their training and experience, the unusual tool marks in that location suggested to the agents that the vehicle might contain a hidden compartment or "trap" which is commonly used by drug dealers to conceal illegal drugs and firearms to avoid detection by law enforcement. Finally, a certified PBSO Drug Detection K9 responded to the location of the traffic stop and alerted on the exterior of the vehicle, the money located within the vehicle, and the dashboard area of the vehicle. At this point agents sealed the vehicle with evidence tape and the vehicle was towed to PBSO evidence impound lot in anticipation of obtaining a search warrant from the court.

6. GARTH was arrested for Felony Driving while License Suspended, Possession of Cocaine, Concealed carry of a Weapon, and Felon in possession of a Weapon, and was transported to the Palm Beach County Jail.

## Vehicle Search Warrant

7. On or about October 27, 2021, Agents from PBSO District 3 Street Team obtained a search warrant for GARTH's White Jeep Grand Cherokee. During the execution of the search warrant on the vehicle, agents discovered that the front passenger window control module was easily removed from the door of the vehicle revealing a natural void in the door. Agents proceeded to the driver's door and pulled out the window control module. Upon removing the module, agents immediately observed in the natural void multiple (3) clear plastic bags containing clear capsules with white powder, a bag containing a white rock like substance, and a Tan/Black Girsan Model MC28 SA-T, 9mm semi-automatic pistol bearing Serial # T636819AV01514. It should be noted that this firearm was touching the bags of narcotics and was loaded with

3

numerous rounds of ammunition in the magazine and a round in the chamber. The firearm was in immediate proximity to where GARTH was sitting during the traffic stop and was easily retrievable due to the ease of removing the control cluster on the door. There was a total of 156 capsules in 3 bags of suspected Fentanyl and approximately 3 grams of suspected crack cocaine. The crack cocaine was broken down into smaller "rocks" of crack that are more commonly used for distribution. These smaller rocks are often referred to as "dubs" street terminology for $20.00 portions of crack. The crack cocaine was field tested utilizing a Cobalt Thiocyanite field test kit and field tested positive for cocaine. The firearm and narcotics were placed into PBSO evidence pending lab testing and analysis.

8. The narcotics to include the suspected Fentanyl and Crack Cocaine were sent to the Department of Homeland Security U.S. Customs and Border Protection Laboratory in Savannah, Georgia for testing and identification. The following are the results of the testing:

- Bag # A1528574 – contained two (2) clear capsules with off-white powder. Substances identified: Fentanyl (Schedule II) in both capsules, Non-Controlled Substance (cutting agent) identified: Xylazine in both capsules. Net Weight of .3373 ± 0.0001 grams

- Bag #: A1528573 – contained ninety-eight (98) clear capsules with off-white powder. A Subsample of twenty-five (25) capsules was used in analysis. Substance identified: Fentanyl (Schedule II) in all capsules, Non-Controlled Substance identified: Xylazine in all capsules. Net Weight of 15.21 ± 0.01 grams

- Bag #: A1528572 – contained fifty-eight (58) clear capsules with off-white powder. A subsample of twenty-two (22) capsules was used in analysis. A second subsample of twenty-two (22) capsules was used in analysis. Substance identified:

4

Fentanyl (Schedule II) in all capsules. Non-Controlled Substance identified: Xylazine in all capsules. Net weight of 10.44 grams ± 0.01 grams

- Bag #: A1528571 – contained an off-white substance. The sample was homogenized, and a portion was used in analysis. Substance identified: Cocaine Base (Schedule II) Non controlled Substance identified: Levamisole. Net weight 3.13 ± 0.01 grams.

9. The Palm Beach County Sheriff's Office swabbed the Girsan Model MC28 9mm pistol for DNA and placed the swabs into evidence. ATF S/A Mark Finnamore subsequently authored and was granted a Federal DNA search warrant for GARTH's DNA to compare to the firearm and narcotics found in the vehicle. On January 18, 2022, ATF S/A Mark Finnamore and ATF S/A Kyle Belga executed the DNA warrant for GARTH's DNA at the West Palm Beach Police Department located at 600 Banyan Boulevard West Palm Beach, Florida 33411. The DNA obtained from GARTH was submitted to DNA Labs International in conjunction with the DNA swabs of the Girsan 9mm Pistol and the narcotics packaging on the same date. On February 18, 2022, S/A Finnamore received the DNA report from DNA Labs International stating the following;

- 21-09882.01 Swabs from trigger/guard of firearm

    The DNA profile obtained from these swabs indicates a mixture of at least three individuals with at least one male contributor. Shawn Garth could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from the swabs is approximately 220 trillion times more probable if the sample originated from Shawn Garth and two unknown persons than if it originated from three unknown persons. Therefore, there is extremely strong support that Shawn

5

Garth and two unknown persons contributed to this DNA profile, rather than three unknown persons.

- 21-09882.02 Swabs from frame/slide of firearm

  The DNA profile obtained from these swabs indicates a mixture of at least three individuals with at least one male contributor. This DNA profile was interpreted as four contributors. Shawn Garth could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from the swabs is approximately 19 quadrillion times more probable if the sample originated from Shawn Garth and three unknown persons than if it originated from four unknown persons. Therefore, there is extremely strong support that Shawn Garth and three unknown persons contributed to this DNA profile, rather than four unknown persons.

- 21-09883.01 Swabs from clear bag labeled in part submission 012

  The DNA profile obtained from these swabs indicates a mixture of at least three individuals with at least one male contributor. Shawn Garth could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from the swabs is approximately 27 quadrillion times more probable if the sample originated from Shawn Garth and two unknown persons than if it originated from three unknown persons. Therefore, there is extremely strong support that Shawn Garth and two unknown persons contributed to this DNA profile, rather than three unknown persons.

- 21-09883.02 Swabs from clear bag labeled in part submission 013

The DNA profile obtained from these swabs indicates a mixture of at least three individuals with at least one male contributor. Shawn Garth could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from the swabs is approximately 59 quadrillion times more probable if the sample originated from Shawn Garth and two unknown persons than if it originated from three unknown persons. Therefore, there is extremely strong support that Shawn Garth and two unknown persons contributed to this DNA profile, rather than three unknown persons.

- 21-09883.03 Swabs from clear bag labeled in part submission 014

The DNA profile obtained from these swabs indicates a mixture of at least three individuals with at least one male contributor. This DNA profile was interpreted as four contributors. Shawn Garth could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from the swabs is approximately 23 quadrillion times more probable if the sample originated from Shawn Garth and three unknown persons than if it originated from four unknown persons. Therefore, there is extremely strong support that Shawn Garth and three unknown persons contributed to this DNA profile, rather than four unknown persons.

- 21-09883.04 Swabs from clear bag labeled in part submission 015

The DNA profile obtained from these swabs indicates a mixture of at least three individuals with at least one male contributor. This DNA profile was interpreted as four contributors. Shawn Garth could not be ruled out as a possible contributor to this mixed DNA profile. The DNA profile obtained from the swabs is

7

approximately 59 quadrillion times more probable if the sample originated from Shawn Garth and three unknown persons than if it originated from four unknown persons. Therefore, there is extremely strong support that Shawn Garth and three unknown persons contributed to this DNA profile, rather than four unknown persons.

10. GARTH has been adjudicated of multiple felonies in the State of Florida prior to October 26, 2021. These convictions include the following:

- FELON IN POSSESSION OF FIREARM OR AMMUNITION on 04/02/2013 in Palm Beach County Case No. 2012CF006213AXXXMB.
- POSSESSION OF COCAINE on 08/26/2011 in Palm Beach County Case No. 502010CF011815BXXXMB

11. A records check conducted with the State of Florida, Office of Executive Clemency indicated that there is no record of restoration of civil rights; specific authority to own, possess or use firearms; or pardon of any kind, having been granted by the Governor and Cabinet of the State of Florida for Shawn Garth.

12. Based on your affiant's training and experience as an ATF interstate commerce nexus expert, your affiant is aware that the Girsan Model MC28 9mm semi-automatic pistol was not manufactured in the State of Florida, and that thus, by its subsequent presence and recovery in Florida, such item of necessity traveled in and affected interstate and/or foreign commerce.

13. WHEREFORE, on the basis of the foregoing, your affiant respectfully submits that probable cause exists to charge Justin GARTH with Possession with intent to Distribute Crack Cocaine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1), Possession with Intent to Distribute Fentanyl, a Schedule II controlled

substance in violation of Title 21, United States Code, Section 841(a)(1), Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18, United States Code, Section 924(c)(1), and Felon in Possession of a Firearm in violation of Title 18, United States Code, Section 922(g)(1).

FURTHER YOUR AFFIANT SAITH NAUGHT.

MARK FINNAMORE
SPECIAL AGENT
BUREAU OF ALCOHOL, TOBACCO, FIREARMS,
AND EXPLOSIVES

ATTESTED TO ME TELEPHONICALLY
(VIA FACETIME) BY THE APPLICANT
IN ACCORDANCE WITH THE REQUIREMENTS
OF FED. R. CRIM. P. 4.1 THIS 12th DAY
DAY OF APRIL, 2022.

9:10 AM

HON. RYON M. McCABE
UNITED STATES MAGISTRATE JUDGE

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

Defendant's Name: __SHAWN JONATHAN GARTH__

Case No.: __22-MJ-8141-RMM__

**Count # 1**
Possession with the Intent to Distribute a Controlled Substance, to wit, Fentanyl and Cocaine Base ("Crack" Cocaine)

Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C)

**Max. Penalty**: 20 years' imprisonment; $1,000,000 fine; minimum 3 year to life term of supervised release; and, a $100.00 special assessment

**Count 2**
Felon in Possession of a Firearm and Ammunition
Title 18, United States Code, Sections 922(g)(1), 924(a)(2)

**Max. Penalty**: 10 years' imprisonment; $250,000 fine; 3 year term of supervised release; and, a $100.00 special assessment.

**Count 3**
Possession of a Firearm in Furtherance of a Drug Trafficking Crime
Title 18, United States Code, Section 924(c)(1)(A)

**Max. Penalty**: a 5 year mandatory minimum sentence of imprisonment to maximum life term of imprisonment, consecutive to any penalty imposed upon Count 1, a fine of $250,000, a 5 year term of supervised release, and a $100 special assessment.